IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-36-D

| | |
|---|---|
| MARY CATHERINE BRYANT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] ) <br> Acting Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM & <br> RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Mary Catherine Bryant ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Supplemental Social Security Income ("SSI") benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

[DE #20] be granted, Defendant's Motion for Judgment on the Pleadings [DE #22] be denied, and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff filed an application for SSI on March 1, 2012, alleging disability beginning April 1, 2010. (R. 15, 149-57.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 80-83, 90-91, 100-02.) On April 22, 2014, a hearing was held before Administrative Law Judge Carl Watson, who issued an unfavorable ruling on July 11, 2014. (R. 15, 25.) On January 4, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

2

judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found

3

Plaintiff had not engaged in substantial gainful employment since March 1, 2012. (R. 17.) Next, the ALJ determined Plaintiff had the following severe impairments: "cervical dysplasia, obesity, depression, anxiety, residuals from bilateral carpal tunnel and trigger finger with status post carpal tunnel and trigger finger release surgery." (R. 17.) As to non-severe impairments, the ALJ found as follows:

> The evidence reveals that the claimant's right shoulder pain, alleged residuals from a childhood head injury, headaches, blurry vision, and alleged mental retardation have had no more than a minimal effect on her ability to perform basic work activities and are therefore considered nonsevere impairments.

(R. 17.) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she cannot climb ladders, rope or scaffolds; she can occasionally climb ramps and stairs; she can frequently but not constantly handle and finger bilaterally; she must avoid working at protected heights; and she is limited to simple, routine, repetitive tasks.

(R. 20.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (R. 21.) At step four, the ALJ concluded Plaintiff had no past relevant work. (R. 23.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 24.)

Specifically, the ALJ found Plaintiff capable of performing the following jobs: room service clerk, stock checker, and work ticket distributor. (R. 24.)

## IV. Substantial Evidence and the ALJ's Opinion

Plaintiff raises three arguments on review. (Pl.'s Mem. Supp. J. Pldgs. [DE #21] at 4-8.) The undersigned agrees that the ALJ erred in ways that preclude meaningful review. Therefore, remand to the Commissioner is recommended.

### A. Severe Impairments and Medical Listings

A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities."[2] 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of her impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. So long as a claimant has any severe impairment or

---

[2] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b)). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.*

5

combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.; see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (agreeing with various circuit and district courts that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation *provided the ALJ considers that impairment in subsequent steps*" (emphasis added)) (citing, *inter alia*, *Hill v. Astrue,* 289 Fed. App'x 289, 292 (10th Cir. 2008) and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and their effects on the claimant. 20 C.F.R. § 404.1526(c). Where a claimant has a severe impairment and the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's

6

requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). An ALJ's failure to compare a claimant's symptoms to the relevant listings or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Cook*, 783 F.2d at 1173.

### 1. Traumatic Brain Injury

Currently, a claimant meets the criteria for listing 11.18 (Traumatic Brain Injury)[3] if she has marked limitation in (i) physical functioning and (ii) mental functioning as it pertains to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting of managing oneself. 20 C.F.R. Part 404, Subpt. P. App. 1, § 11.18. At the time of the ALJ's determination, the listings instructed an ALJ to analyze a claimant with traumatic brain injury under listing 11.18 (cerebral trauma). 20 C.F.R. Part 404, Subpt. P. App. 1, § 11.00F (effective Feb. 26, 2014 to Dec. 8, 2014).

---

[3] "Traumatic Brain Injury" is defined as "damage to the brain resulting from skull fracture, collision with an external force leading to a closed head injury, or penetration by an object that enters the skull and makes contact with brain tissue." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00Q.

7

Here, the record indicates that Plaintiff was hit by a car during her early childhood years and had metal plates surgically inserted into her skull. (R. 20-21, 46, 341, 348.) A cognitive assessment conducted in 2012 describes Plaintiff as having "a low level of memory and intelligence." (R. 348.) Yet the ALJ's decision does not reflect whether he considered listing 11.18. The record also indicates that Plaintiff has never been able to sustain gainful employment, that she was frequently terminated from part-time employment due to limitations with her upper extremities, and that she was limited in her ability to concentrate, persist or maintain pace. (R. 39, 44, 221-28.) In light of the evidence suggesting traumatic brain injury, the ALJ should have considered whether Plaintiff met the criteria for listing 11.18. Because the ALJ failed to consider the evidence in light of this listing, it is not clear whether substantial evidence supports the ALJ's finding that Plaintiff does not meet or medically equal a listing.

### 2. Intellectual Disability

Plaintiff contends that the ALJ erred by not finding that Plaintiff's intellectual disability severely impairs her, and relatedly, that Plaintiff does not meet or equal the criteria for listing 12.05 (intellectual disorder). This argument has merit and also warrants remand.

Because the ALJ discussed at length Plaintiff's intellectual disability at step three, the ALJ's failure to identify intellectual disability as a severe impairment, if error, would be harmless. *See Jones*, 2009 WL 455414, at *2.

8

Case 7:16-cv-00036-D   Document 25   Filed 02/17/17   Page 8 of 14

The ALJ found that Plaintiff did not meet the criteria for Paragraph A, B, or C for listing 12.05.[4] (R. 19.) The ALJ determined Plaintiff did not meet Paragraph A criteria because she "is able to perform activities of personal care independently and demonstrated the ability to follow instructions on consultative examination." (R. 19.) The ALJ determined Plaintiff did not meet Paragraph B criteria because she did not have a valid IQ score in the 50 to 58 range and there was no indication from school records that she received special education services. (R. 19.) The ALJ determined Plaintiff did not meet Paragraph C criteria because she did not have a valid IQ score in the 60 to 70 range and "there was no physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 19.)

However, the listing at the time of the ALJ's determination also included paragraph D criteria which could be satisfied. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05 (effective Feb. 26, 2014 to Dec. 8, 2014). The ALJ did not consider whether Plaintiff met the criteria for paragraph D of listing 12.05. (R. 19-20.)

Moreover, the ALJ's analysis of listing 12.05 precludes meaningful review. The ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173 (citations omitted). The ALJ failed to fulfill that duty in this matter.

---

[4] The criteria for listing 12.05 has been updated and currently only has two paragraphs.

Here, the Plaintiff submitted herself to two state-agency consultative examinations. Both examinations were conducted by psychologists. (R. 343, 349.) The report from the second exam, written by Dr. Reuben Silver, contains IQ testing results. The testing resulted in a full scale IQ of 50, but Dr. Silver stated that he did not believe Plaintiff was putting forth her best effort. (R. 345.) Because of this observation regarding Plaintiff's effort, and because of Plaintiff's "figure drawings," he believed her intelligence is "not as low as [it] turns out to be on formal testing." (R. 345.) Nonetheless, Dr. Silver opined that Plaintiff "still might be mildly [intellectually disabled]" and diagnosed her with "Mild mental retardation." (R. 348-49.) Noting her history of significant depression, reported pain, and "low level of memory and intelligence," he further opined that Plaintiff "would have difficulty in adjusting to the world of work." (R. 349.) Dr. Silver also stated that Plaintiff "would have considerable difficulty managing benefit payment[s] should they be awarded to her." (R. 349.)

Two reasons make it impossible to determine whether substantial evidence supports the ALJ's finding with respect to listing 12.05. First, while the ALJ had good reason to find that the IQ score of 50 from the exam with Dr. Silver was not reliable, Dr. Silver nonetheless opined that Plaintiff was intellectually disabled. Other evidence in the record is consistent with Dr. Silver's opinion, *e.g.*, Plaintiff reported that she repeated several grades in school and never made it past the Ninth Grade, Plaintiff has never maintained full-time employment despite several jobs, and Plaintiff suffered a severe head injury as a child. Second, the school records do not

10

Case 7:16-cv-00036-D   Document 25   Filed 02/17/17   Page 10 of 14

indicate special education services, but these records consist of only five pages.[5] (R. 527-32.) The school records, as meager as they are, show that in third grade Plaintiff tested at the fifteenth percentile nationally with a stanine of three, and that in sixth grade Plaintiff tested at the ninth percentile nationally with a stanine of two. (R. 529.) Moreover, the school records appear to indicate that Plaintiff underwent standardized testing during the 1987-1988 school year while in Ninth Grade at Hoggard High School. (R. 212, 529.) That would make Plaintiff an 18- to 19- year-old high school freshman—a fact quite consistent with the possibility that she may have received special education services, suffered from intellectual disability, or both.

The ALJ ignored all evidence of Plaintiff's intellectual impairment and discredited Dr. Silver's opinions on the ground they were "based on findings admittedly associated with claimant's lack of effort." (R. 22.) The ALJ stated: "Dr. Silver noted that his objective findings were not necessarily reliable, yet nevertheless set forth an opinion describing significant limitations." (R.22.) That is not what Dr. Silver's records reflect, and the ALJ's reasoning for rejecting Dr. Silver's opinion as to Plaintiff's intellectual impairment is not supported by substantial evidence.

---

[5] Peculiarly, the record indicates that educational records were requested only from Hoggard High School as opposed to the school system. (R. 73.)

Furthermore, Plaintiff's records indicate she was physically and sexually assaulted as a child (R. 340) and that her brother was her legal guardian while in school (R. 531). There is also mention of a Department of Social Services ("DSS") case involving Plaintiff. (R. 233.) However, there does not appear to have been a request made for any DSS records.

11

In sum, the ALJ appears to have disregarded all evidence of intellectual impairment without reconciling the inconsistencies in the evidence or more fully developing the record with regard to Plaintiff's historical intellectual functioning. Accordingly, the undersigned recommends that the matter be remanded to the Commissioner for further consideration.

### 3. Right Shoulder Pain

Plaintiff contends that the ALJ erred by not identifying her right shoulder pain as a severe impairment and by failing to evaluate the limitation posed by this impairment. The undersigned disagrees.

Here, the ALJ identified substantial evidence to support his determination that Plaintiff's shoulder pain was not severe. (R. 17.) The ALJ justified this finding by noting that "[t]here is no evidence in the record that the claimant's right shoulder pain persisted *or is expected to persist* for 12 consecutive months." (R. 17.) The medical evidence of record supports the ALJ's finding in this regard.

### B. State Medicaid Award

Plaintiff contends that the ALJ erred by not explaining "the basis for discounting the decision" of the North Carolina Department of Health and Human Services to award Plaintiff Medicaid benefits on the ground that she met the disability criteria for listing 12.05C. The ALJ did not err in this regard.

The final responsibility for determining whether an individual is disabled under the Social Security Act is reserved to the Commissioner. Thus, disability decisions by other governmental agencies are not binding on the Commissioner.

12

*Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *2-3 (E.D.N.C. Nov. 5, 2010); 20 C.F.R. § 404.1504. Nevertheless, such decisions are evidence. *Alexander*, 2010 WL 4668312, at *2; 20 C.F.R. § 404.1512(b)(5). In making a disability determination, the Commissioner must evaluate and give due consideration to all evidence that is presented in support of an individual's case, including disability decisions of other agencies. SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Contrary to Plaintiff's argument, the ALJ in this case did not fail to explain his decision to assign no weight to the state agency disability determination. Rather, the ALJ explained that he assigned no weight to that determination because the documentation in the record did not provide any insight into Plaintiff's work abilities and offered minimal discussion of the evidence upon which it was based. (R. 23.) The ALJ did not err in this regard.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #22] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 3, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and

Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 17th day of February 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge